34 P.3d 821 (2001)
107 Wash.App. 734
William RABON, Appellant,
v.
CITY OF SEATTLE, Respondent.
No. 45939-2-I.
Court of Appeals of Washington, Division I.
July 2, 2001.
Publication Ordered August 13, 2001.
*822 Mitzi D. Leibst, Harlan R. Dorfman, Seattle, for Appellant.
Thomas M. Castagna, Seattle, for Respondent.
BECKER, A.C.J.
This is Wilton Rabon's second appeal in extended litigation aimed at preventing the City of Seattle from destroying his dogs after a jury convicted him of the criminal charge of owning vicious dogs. The case began when Rabon filed a civil suit seeking an injunction against having his dogs destroyed. In his first appeal, the Supreme Court decided that the city ordinance entitled Rabon to a further hearing before the City could destroy the dogs. His present appeal *823 is from an order dismissing his constitutional claims against the City on summary judgment. He primarily argues that a person's relationship with a pet dog, even one found to be "vicious" as defined by the ordinance, is an interest of such importance that the hearing on alternatives to destruction violates due process unless returning the dog to its owner is an option that can be considered. Because it is unnecessary to decide that question in the present posture of the case, and Rabon has not shown any other constitutional flaw in the City's proceedings against his dogs, we affirm the order of summary judgment.
In early 1991, Seattle Animal Control began receiving complaints that two of Rabon's dogs were menacing and biting pedestrians near Rabon's apartment. The dogs, Parshebe and Word, were a Lhasa Apso/Terrier mix. Both were unlicensed. Animal Control repeatedly warned Rabon to license and control his dogs. When he did not do so and the complaints continued into 1992, Animal Control impounded the dogs.
Rabon sought the return of his dogs by replevin. Under order from King County Superior Court, Animal Control released Rabon's dogs to him on the condition that he obey all the laws regarding dogs, and keep the dogs leashed when outside of the residence. The order gave Animal Control the power to summarily detain the dogs if Rabon failed to comply with the conditions.
On two separate occasions in May, 1993, Parshebe and Word, while near Rabon's residence, reportedly attacked and bit two pedestrians around their ankles. The bites caused one person to go to the hospital and caused another to suffer considerable bruising. At this point, Animal Control picked up Parshebe and Word and quarantined them.
The City charged Rabon with four counts of owning a vicious animal as prohibited by Seattle Municipal Code section 9.25.083. A vicious animal is one that bites, or otherwise harms a human being, or which demonstrates menacing behavior towards human beings. See former SMC 9.25.024. A jury convicted Rabon of all four counts on September 9, 1993. At sentencing, the municipal court ruled that Rabon could not license Parshebe and Word for two years, and stated that Animal Control would decide their disposition.
In July, 1995, after Rabon's appeal of his conviction was affirmed, Animal Control notified Rabon that it intended to destroy his dogs. Rabon sued the City alleging that the destruction of his dogs would violate his constitutional rights and that the City had not given him an opportunity to be heard before deciding to destroy the dogs. The superior court denied his request for an injunction. Rabon appealed. This court affirmed, acknowledging a provision in the Seattle ordinance for notice, hearing and appeal before the City can destroy a dog, but holding that the requirement in the ordinance was satisfied by the procedure afforded in the criminal trial, and due process did not require more. Rabon v. City of Seattle, 84 Wash. App. 296, 305-307, 932 P.2d 646 (1996), review granted, 131 Wash.2d 1024, 937 P.2d 1101 (1997). The Washington Supreme Court granted discretionary review and issued an opinion on May 21, 1998, which held that the Seattle ordinance did entitle Rabon to a separate hearing to present reasons why his dogs should not be destroyed. See Rabon v. City of Seattle, 135 Wash.2d 278, 296, 957 P.2d 621 (1998). The Court remanded for further proceedings:
While petitioner clearly is not entitled to contest the determination that his animals are vicious, he is entitled to contest the determination that they should be destroyed, regardless of whether the finding of viciousness was made by the director or necessarily made by the jury in finding him guilty of owning a vicious animal.... Plainly, because it is the owner who is entitled to appeal, the owner is entitled to provide evidence and argument as to why the animal should not be destroyed despite its being a vicious animal.
Rabon, 135 Wash.2d at 295-96, 957 P.2d 621.
Back in superior court after the Supreme Court decision, Rabon amended his complaint in August, 1998, by alleging a civil rights claim against the City under 42 U.S.C. § 1983. He also challenged the city ordinances as vague, overbroad, and a violation of due process.
*824 Meanwhile, the City set out to follow the Supreme Court's decision by providing Rabon with a hearing. In November 1998, the City's Animal Control Manager, David E. Jordan, invited Rabon to meet with him to present reasons supporting non-destruction. Although Rabon maintained that the City did not have authority to pursue its administrative process while his suit remained pending in superior court, he did participate in the process. At a meeting with Jordan later that month, Rabon argued that his dogs should not be destroyed because they were not a threat to public safety; the 1991 and 1992 incidents were fabricated by his vindictive landlord to force him to move; the incidents occurred when the dogs were staying with someone else; one dog might have been misidentified as the attack dog due to a physical resemblance to the actual attacker; one of the dogs was ill; and his then current living arrangement allowed him to provide for his dogs.
Finding Rabon's reasons to be unpersuasive, Jordan ordered Rabon's two dogs, Word and Parshebe, to be destroyed, as authorized by former Seattle Municipal Code §§ 9.25.030 and 9.25.035. Rabon appealed this decision to a municipal hearing examiner. At the hearing, Rabon's counsel cross-examined Jordan at some length, and through four witnesses and a written memorandum with exhibits, presented reasons why Rabon's dogs should not be destroyed. On January 27, 1999, the hearing examiner issued findings of fact and conclusions of law, which affirmed Jordan's decision and authorized the humane destruction of Rabon's dogs. The destruction did not take place then, however, because Rabon's litigation in superior court was still pending under remand from the Supreme Court. The two dogs remained in the custody of Seattle Animal Control where they had been since first impounded in 1992. One of the dogs, Parshebe, died of cancer in Animal Control facilities in August, 1999.
Both parties moved for summary judgment on November 22, 1999. The trial court granted the City's motion and dismissed all of Rabon's constitutional claims. Rabon petitioned for review to the Washington Supreme Court. The Supreme Court referred the appeal to this court.
We review a grant of summary judgment de novo, engaging in the same inquiry as the trial court. Bishop v. Miche, 137 Wash.2d 518, 523, 973 P.2d 465 (1999). The appellate court considers the facts and all reasonable inferences from those facts in the light most favorable to the non-moving party. Wilson v. Steinbach, 98 Wash.2d 434, 437, 656 P.2d 1030 (1982). Summary judgment is proper if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. CR 56(c).

Jurisdiction
Rabon contends Animal Control was without "jurisdiction" to act in 1998 in the matter of his dogs after the Supreme Court decision in 1998. According to Rabon, after the remand order came down, the case retained its pre-appeal posture as a case in superior court, and the superior court should not have permitted the City to assert control over the case through its administrative process. After the hearing before the hearing examiner, he asked the superior court to declare the acts of Animal Control ultra vires because only the superior court in his view had "jurisdiction." The superior court rejected this argument.
In arguing that the superior court ruling should be reversed, Rabon contends the ruling implies a finding that Animal Control had "primary jurisdiction", and that such finding was erroneous because none of the criteria for an agency's assertion of primary jurisdiction were present. This is a convoluted argument without any real basis in the law. The doctrine of primary jurisdiction applies where a claim that is originally cognizable in a court requires the resolution of issues that are within the special competence of an administrative body. Applying the doctrine of primary jurisdiction is discretionary with the court, and when applied its result is to suspend the judicial process pending referral to the administrative body. See In re Real Estate Brokerage Antitrust Litigation, 95 Wash.2d 297, 300-304, 622 P.2d 1185 (1980). The doctrine does not provide a basis for a court to interfere with an agency's *825 exercise of the authority entrusted to it by statute or ordinance.
A proceeding for destruction of a vicious dog is not a type of case that is originally cognizable in superior court. Where an owner has been found guilty of owning a nuisance, vicious, or dangerous animal, the Seattle Municipal Code provides Animal Control with authority and discretion to order the destruction of the animal. Any such order may be appealed to the office of the Hearing Examiner, who has the power to authorize an alternate disposition of the animal. See former SMC 9.25.036. This was the procedure provided by ordinance, as recognized in the Supreme Court's opinion, and the City appropriately followed it on remand. We conclude the superior court properly rejected the argument that the administrative process initiated by Animal Control in 1998 was ultra vires.

Application of New Ordinance
In August of 2000, the City of Seattle amended its animal control ordinance. According to Rabon, the new ordinance does not authorize the destruction of his remaining dog, Parshebe. As a consequence, Rabon contends, he is entitled to have Parshebe returned to him. His reasoning is based on the initial premise that "Where the law authorizing an agency's action is changed while that action is in the process of legal challenges, reviewing courts should not uphold that action." Brief, at 14. Rabon is mistaken in his initial premise, which he attempts to derive from Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 171-72, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962). In that case, the Supreme Court rejected the Interstate Commerce Commission's choice of remedy for a disruption in motor services. The cause of the disruption in service was a form of boycott that became illegal under a statute passed by Congress four months after the commission's decision. This change in the law, the court said, should have been one of the factors considered by the district court in deciding whether the commission was too hasty in granting a certificate to a new carrier instead of issuing a cease-and-desist order. Burlington Truck Lines, 371 U.S. at 165, 83 S.Ct. 239. Burlington Truck Lines is a very fact-specific case that arose in a context vastly different from animal control in terms of agency mission, policy, and procedure. And the posture of the casea direct appeal for judicial review of an agency decisionis quite different from the posture of Rabon's case, an appeal from an order granting summary judgment in a civil rights case alleging the unconstitutionality of actions taken by the City's Animal Control Department. Rabon has not appealed from the hearing examiner's decision. He makes no attempt to explain how Burlington Truck Lines, despite its many dissimilarities, compels this court not to "uphold" the decision to destroy his dogs, especially considering the decision to destroy his dogs is not even before us on judicial review.
The director of Animal Control and the hearing examiner applied the law that was in force at the time of their decisions. The new ordinance did not expressly call for retroactive application, and therefore, as the City argues, it operates prospectively unless remedial in nature. See Miebach v. Colasurdo, 102 Wash.2d 170, 180-81, 685 P.2d 1074 (1984). Rabon has not argued that the new ordinance is remedial, and in fact, he characterizes the change as adding to the burden on defendants and imposing a more severe punishment than was permissible under the ordinance as it existed when the crime was committed. We conclude that the amendment to the ordinance provides no basis to reinstate Rabon's constitutional claims against the City.

Due Process
The Supreme Court in Rabon did not address the constitutional issue of due process, and instead based its decision on the provisions of the city ordinance. Rabon returns to the constitutional issue in this appeal, arguing that the process provided on remand did not satisfy principles of due process.
The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. Mathews v. Eldridge, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Courts determine the formality and procedural requisites *826 of a hearing under a three-factor test established in Mathews:
First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Tellevik v. Real Property, 120 Wash.2d 68, 78, 838 P.2d 111 (1992) (citing Mathews, 424 U.S. at 335, 96 S.Ct. 893). As the risk of erroneous deprivation increases, so does the process due. See Tellevik, 120 Wash.2d at 81-82, 838 P.2d 111.
The first factor calls for an examination of the private interest of Rabon in maintaining the life of a dog that has been determined to be vicious. Most courts recognize dog ownership as being "of an imperfect or qualified nature" and therefore subject to police power. The state may use its power to destroy or regulate dogs in order to protect human citizens. See American Dog Owners Ass'n v. Yakima, 113 Wash.2d 213, 217, 777 P.2d 1046 (1989) (rejecting vagueness and overbreadth challenge to a Yakima ordinance banning all breeds of pit bulls). But the fact that an exercise of police power is permissible does not, in itself, answer the question as to the nature of the interest at stake. Rabon requests that we recognize his right in his dog as something akin to a liberty interest, like a familial relationship. He argues that an action to destroy a beloved pet calls for a more careful process than might be used to destroy an inanimate nuisance.
There may be merit to the argument that a person's relationship with a dog deserves more protection than a person's relationship with, say, a car. But in this case, we cannot lose sight of the fact that Rabon's dog has been found to be vicious in a criminal proceeding with maximum due process protection. Therefore, the question is the regard to be given to a person's interest in keeping a vicious dog. We do not necessarily accept the City's argument that the result of the criminal trial extinguished Rabon's substantive right to dog ownership altogether. But we cannot conclude that a person's interest in keeping a vicious dog as a pet is so great as to require a more careful procedure than is provided by Seattle's administrative and hearing process.
Under the second prong of the Mathews test, the question is whether additional safeguards would have lowered the risk of an erroneous deprivation. As noted in the Supreme Court decision, the Seattle code mandated that Rabon's hearing provide, "among other things, for submission of evidence, cross-examination of witnesses, arguments, and a written decision with findings, conclusions, and reasons for the decision." Rabon, 135 Wash.2d at 295-96, 957 P.2d 621. Rabon argues that the hearing provided by the City was deficient because it did not provide sufficient opportunity to cross-examine witnesses.
At the hearing, Animal Control called Animal Control Manager, David Jordan, who testified about why Rabon's dogs should be destroyed based on the Animal Control record. The Animal Control record consists of reports and statements made about Rabon's dogs since those incidents began in 1991. Rabon claims that he was denied the right to cross-examine witnesses because the City called only Jordan, and as a result Rabon did not have the opportunity to confront the witnesses upon whose statements Jordan based his testimony.
The Seattle Administrative Code, § 3.02.090(M), provides that every party shall have the opportunity to cross-examine witnesses who testify at a hearing. See SMC 3.02.090(M). It does not mandate that the hearing examiner or the City must call every conceivable witness. Rabon has not shown that the hearing examiner prevented him from calling the witnesses himself. In that important respect, his hearing is not similar to the hearing discussed in Weyerhaeuser v. Pierce County, 124 Wash.2d 26, 32-33, 873 P.2d 498 (1994), the case on which he relies. In that case, the hearing was held deficient because the hearing examiner refused to allow cross examination of the members of the county staff who had prepared a *827 contested environmental impact statement and staff report. Rabon does not contend that he tried to call witnesses and was refused permission to do so. And he does not contend that the hearing was not governed by appropriate rules of evidence. Rabon's attorney extensively cross-examined Jordan, presented evidence favorable to Rabon through memorandum, and called several witnesses who testified on his behalf. Because Rabon had the opportunity to cross-examine the one witness the City did call, it cannot be said that the hearing violated due process for want of cross-examination.
In arguing that the remand hearing procedure posed a significant risk of erroneous deprivation, Rabon's principal contention is that it does not allow the hearing examiner to consider, as an alternative to euthanasia, the option of returning a vicious dog to its owner. The code does authorize the hearing examiner to consider alternatives to destruction:
B. The Hearing Examiner shall have the power to:
1. With the owner's consent, authorize an alternate disposition, such as placement of a dangerous animal in a zoological garden, or, if a snake, in a herpetarium.
Former SMC 9.25.037(B)(1). The Supreme Court did not regard the examples of alternative disposition as an exclusive list. See Rabon, 135 Wash.2d at 295, n. 6, 957 P.2d 621 (because the words "such as" precede examples given by former SMC 9.25.037(B)(1), the examples provided by the ordinance are not exclusive). Rabon argues that the hearing process creates too great a risk of erroneous deprivation unless the hearing officer is allowed sufficient flexibility to consider returning a vicious dog to its owner after assessing the actual degree of danger the dog represents and other circumstances.[1] He asserts that both the manager of Animal Control and the hearing examiner in his case refused to exercise such discretion, and that the only alternative to destruction they considered was exiling his aging dog to a secure facility out of state.
Rabon's assertion is not borne out by the record. It is true that the City has consistently maintained that a vicious dog cannot be returned to its owner because it is unlawful to own a vicious dog. The City's argument is not necessarily correct, because it seems to imply that no one can be permitted to own a vicious dognot even by keeping it in a secure facility. But the fact that the City's interpretation of the ordinance is questionable does not, of course, prove that the hearing process was unfair; the hearing examiner was free to adopt a different interpretation of the ordinance.
Faced with the dispute about whether return of a vicious dog to its owner is an available option, the hearing examiner found it unnecessary to provide a definitive interpretation of the ordinance. Instead, as described in the hearing examiner's conclusion of law number five, the examiner assumed for the sake of argument that return of the dog was an available option, but concluded Rabon had failed to prove it was an appropriate option because he had not responsibly controlled the dogs while they were in his care:
5. The Department and the appellant disagree as to whether or not the authority of the Hearing Examiner to order "an alternate disposition" to humane disposal includes return of animals determined to be "vicious" to Mr. Rabon in the City of Seattle. The Department argues that such ("absolute and unfettered") return to the owner is not authorized. The appellant argues that the Code does not limit "alternate disposition" to placing the animals outside the City. Given that it is unlikely that the consent of the owner would be required for "alternate disposition" if the Code contemplated that alternate to include return to the owner, and that both the examples given involve animals being *828 placed in a secure environment elsewhere, the Department likely has the better argument. However, it is not necessary to reach the question of whether the Hearing Examiner's authority extends to a return of Parshebe and Word to Mr. Rabon. On these facts, regardless of whether the authority exists, return to Mr. Rabon does not provide a viable alternative. In the past Mr. Rabon did not take good care of these dogs and he did not protect the public from their harassing and hurtful behavior. Mr. Rabon offers only his current living arrangement having one more door between the dogs and the public to ensure the welfare of the dogs and the safety of the public. This is not persuasive. The return of the animals suggested by the appellant is not an acceptable "alternate disposition" as it would not be likely to preserve the welfare of the animals and ensure the safety of the public as would "placement of a dangerous animal in a zoological garden, or, if a snake, [placement] in a herpetarium."
In light of this conclusion, we cannot agree with Rabon's contention that the outcome of the hearing was unfairly predetermined. The examiner did consider returning the dogs to Rabon as an alternative to death or exile, weighed the competing evidence and arguments, and decided that returning the dogs to Rabon was not a viable alternative. Because the alleged absence of such consideration is the crux of Rabon's argument about the risk of erroneous deprivation, that argument fails. Whether the hearing process would necessarily violate due process if the hearing officer had completely refused to consider the option of returning the dog to its owner is not a question that we are required to answer, given the posture of this case, and therefore we, like the examiner, decline to provide a definitive interpretation of the ordinance.
The third Mathews elementthe City's interest and the expense and burden of providing additional safeguardsis not really at issue, and we do not separately address it. The hearing allowed Rabon to argue that his remaining dog should be returned to him and not be destroyed. We conclude the hearing was consistent with the Supreme Court's mandate and consistent with Mathews.
Rabon's final due process argument is that the City waited five years, from initial seizure of the dogs in 1993 to the Supreme Court decision in 1998, to provide him with any hearing at all. He is incorrect. His criminal trial constituted a hearing in 1993. The fact that he did not have a right to an immediate pre-deprivation hearing before the dogs were seized and impounded is justified by the strong public interest in prompt action to prevent more attacks. See Everett v. Slade, 83 Wash.2d 80, 83, 515 P.2d 1295 (1973); Fuentes v. Shevin, 407 U.S. 67, 81-82, 90, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972).
Affirmed.
APPELWICK, J., and ELLINGTON, J., concur.
NOTES
[1] In response to the City's argument that the judgment in the criminal proceeding forever prevents a vicious dog from being returned to its owner Rabon cites RCW 35.20.255, providing that a municipal court's power to enforce conditions of probation continues only for two years past the date of conviction. Because he makes this argument for the first time in his reply brief, we do not address it. RAP 2.5(a); State v. WWJ Corp., 138 Wash.2d 595, 601-02, 980 P.2d 1257 (1999).