[No. 55292-9-I. Division One. January 23, 2006.]

PETER MANSOUR, *Appellant*, v. KING COUNTY ET AL., *Respondents*.

258

*Adam P. Karp*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *John R. Zeldenrust, Deputy*, for respondent.

¶1 AGID, J. — King County Animal Control issued an order requiring Peter Mansour to remove his dog from King County or give her up to be euthanized. The King

County Board of Appeals upheld that order, and the superior court granted summary judgment for the county affirming the board. Mansour appeals, arguing the board hearing violated his due process rights. Procedural due process requires that Animal Control prove its case before the board by a preponderance of the evidence. Because the superior court sanctioned an inadequate standard of proof and it is unclear what standard the board applied, we agree with Mansour that the board violated his procedural due process rights.

¶2 Further, in order for Mansour, or any other pet owner, to effectively present his case and rebut the evidence against him, due process requires that he be able to subpoena witnesses and records. Because the board refused to let him do so, he was prejudiced in his defense against the Animal Control order. Mansour also received insufficient notice because the removal order identified the wrong removal authority and did not inform him what Animal Control must prove at the board hearing. We reverse the superior court's summary judgment order and remand to the Board of Appeals.

## FACTS

¶3 Peter Mansour lives in Kirkland with his dogs, Maxine and Kobe. On September 25, 2002, King County Animal Control issued Mansour a warning notice stating that it had received a complaint about his dogs being loose in the neighborhood in violation of King County Code (KCC) 11.04.230. It instructed him to abate the violation by confining the dogs to his property at all times unless on a leash and to control excessive barking. The notice included boilerplate language in bold print that said: "All cases involving a bite or attack may result in the issuance of a Notice and Order of Confinement or Removal and a civil penalty." In response to the warning, Mansour increased the height of his backyard fence.

¶4 On May 27, 2003, Mansour went to work and left his dogs at home with his housekeeper, Shelly Miller. Miller

testified that she let the dogs out into the backyard despite Mansour's instructions to keep them inside. A short time later Kobe ran back inside whining and looking out the window. Miller assumed Maxine had gotten out, and when she went out the front door she heard Maxine barking. She saw Maxine trotting toward the neighbors' Robert and Dioni O'Brien's, driveway. Maxine picked up the O'Brien's cat, Lacie, in her mouth, at which point Miller yelled, "Max, no," and Maxine put the cat down. Miller put Maxine in the house and then checked on Lacie, who was severely injured. Miller notified Mansour, who immediately left work and took Lacie to Juanita Veterinary Hospital.

¶5 On May 28, the O'Briens moved Lacie to Cascade Veterinary Specialists where Dr. Thomas Fry diagnosed her with a broken jaw, fractured and dislocated pelvis, and severe spinal cord damage. On May 30, Lacie was euthanized because of her extensive injuries. After the euthanization, Dr. Fry performed a more thorough examination and discovered that Lacie also had numerous puncture marks consistent with animal bites on opposite sides of her body.[1] He later testified that although the kind of fractures Lacie had often resulted from vehicular trauma, the punctures could not have resulted from an auto accident. Dr. Fry said the punctures were in an area consistent with the fractures, and animal bites could have caused the fractures on their own. The lack of abrasions and contusions indicated she had not been hit by a car.

¶6 Animal Control issued Mansour a warning notice that it had received a complaint that Maxine had exhibited "vicious propensities," and was a "[v]icious animal running" at large.[2] The notice contained the same boilerplate "bite or attack" language as the September 25, 2002 notice. On July 10, 2003, Animal Control issued a notice and order of removal (removal order) to Mansour informing him that Maxine was in "violation of King County Code 11.04.290(b),

[1] Each party was given photos of the puncture marks.

[2] KCC 11.04.230(H), (I). The notice was not dated.

in that [she] has **bitten, attacked or endangered the safety of a human being or domesticated animal . . . .**" It charged that Maxine was also in violation of RCW 16-.08.090 "in that she has bitten, attacked or otherwise threatened the safety of a human being or domestic animal either on public or private property without provocation." Animal Control notified Mansour that "[a]nimals declared in violation of RCW 16.08.090 and/or King County Code 11.04.230 may be kept in King County only upon compliance with the requirements set by King County pursuant to King County Code 11.04.290." Because of the "severity of the incident and grave injuries to 'Lacie' and in order to protect the public safety," Animal Control ordered Mansour to remove Maxine from King County within 48 hours and have her microchipped. Failure to comply would result in Maxine's being disposed of as an unredeemable animal. Animal Control also fined Mansour $100.

¶7 Mansour appealed the removal order to the King County Board of Appeals. Before the board hearing, Mansour's attorney sought to subpoena and/or depose witnesses, and requested production of x-rays, postmortem reports, chart notes, and Lacie's body for evaluation.[3] The board apparently denied these requests.[4] At the hearing on October 29, 2003, the O'Briens testified that the dogs were a neighborhood nuisance, Maxine could still get over the fence, and that she had gotten out even after the Lacie incident.[5] Dr. Fry testified via telephone. Mansour called Miller, who testified about the events of May 27, 2003. He also called his receptionist, Beckie Bonnell, who testified

[3] At the board hearing, the county submitted signed statements from several people, including Mansour's neighbor Catherine Usher and his trash hauler Steve Wegener, attesting to Maxine's being a neighborhood nuisance. Mansour's attorney interviewed Usher and Wegener and wanted to subpoena them for the hearing because they told him that their statements were not entirely accurate.

[4] Mansour asserts that board attorney Janine Joly denied the discovery request as not permitted by statute or rule. The record does not indicate what happened, but the county does not argue this point.

[5] In late June 2003, the O'Briens reported that Maxine was again loose in the neighborhood and took photos to document their claim. On June 30, 2003, Animal Control issued Mansour a warning notice about this complaint.

that Maxine stayed at her house several times and never acted aggressively toward her cats or any other cats in her neighborhood. Mansour testified about the May 27, 2003 incident, asserted that the O'Briens were severely overstating the extent of Maxine's bad behavior, and explained the steps he had taken to prevent problems with the dogs. The board upheld the removal order. Mansour filed a writ of certiorari to the King County Superior Court, and the county moved for summary judgment. The court granted the motion and affirmed the board's ruling.

## DISCUSSION

■■ ¶8 Mansour asks us to determine what process a municipality must provide a dog owner before it significantly impacts his property interest in his dog.[6] When we review a trial court's decision on a writ of certiorari, we are reviewing the "decision of the body that makes the findings and conclusions relevant to the decision."[7] Both we and the trial court function in an appellate capacity, considering questions of law de novo and evaluating factual determinations under a substantial evidence standard.[8] Substantial evidence is evidence sufficient to persuade a reasonable person of the truth of the finding.[9] The substantial evidence standard is "deferential and requires the court to view the evidence and reasonable inferences in the light most favorable to the party who prevailed in the highest forum that

---

[6] Due process rights attach to dog ownership. *See Rabon v. City of Seattle (Rabon II)*, 107 Wn. App. 734, 743-44, 34 P.3d 821 (2001) (applying the *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) due process factors); *Phillips v. San Luis Obispo County Dep't of Animal Regulations*, 183 Cal. App. 3d 372, 376, 228 Cal. Rptr. 101 (1986) (due process attaches to dog ownership). Mansour also argues there is a liberty interest at stake. Given our disposition of this appeal, we need not decide here whether a liberty interest attaches to pet ownership.

[7] *Davidson v. Kitsap County*, 86 Wn. App. 673, 681, 937 P.2d 1309 (1997).

[8] RCW 7.16.120(3), (5); *Hansen v. Chelan County*, 81 Wn. App. 133, 137-38, 913 P.2d 409 (1996).

[9] *Dillon v. Seattle Police Pension Bd.*, 82 Wn. App. 168, 171, 916 P.2d 956 (1996).

exercised fact-finding authority."[10] Ultimately, we must determine whether the board acted arbitrarily, capriciously, or contrary to law in upholding Animal Control's removal order.[11] We may also reverse the board's decision when it is "clearly erroneous."[12]

## I. *Procedural Due Process*

¶9 Mansour argues that the board hearing did not meet minimum procedural due process requirements because the board imposed an inadequate burden of proof on Animal Control and prevented him from subpoenaing records and witnesses. The county argues that Mansour had a contested hearing that followed board rules. We determine de novo whether the hearing violated Mansour's due process rights.[13]

¶10 " 'Procedural due process imposes constraints on governmental decisions which deprive individuals of "liberty" or "property" interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.' "[14] In determining what process is due, a court weighs (1) the private interest affected by the official action, (2) the risk of an erroneous deprivation of that interest through the procedures used, (3) the probable value of

---

[10] *Sunderland Family Treatment Servs. v. City of Pasco*, 127 Wn.2d 782, 788, 903 P.2d 986 (1995) (citing *Freeburg v. City of Seattle*, 71 Wn. App. 367, 371-72, 859 P.2d 610 (1993); *State ex rel. Lige & Wm. B. Dickson Co. v. County of Pierce*, 65 Wn. App. 614, 618, 829 P.2d 217, *review denied*, 120 Wn.2d 1008 (1992)).

[11] *See Stegriy v. King County*, 39 Wn. App. 346, 350-51, 693 P.2d 183 (1984) (" 'The judiciary will only review the actions of an administrative agency to determine if its *conclusions* may be said to be, *as a matter of law*, arbitrary, capricious, or contrary to law.' " (alteration in original) (quoting *Helland v. King County Civil Serv. Comm'n*, 84 Wn.2d 858, 862, 529 P.2d 1058 (1975))).

[12] *Polygon Corp. v. Seattle*, 90 Wn.2d 59, 68-69, 578 P.2d 1309 (1978) (citing *Ancheta v. Daly*, 77 Wn.2d 255, 259-60, 461 P.2d 531 (1969)). We may not substitute our judgment for that of the board and may find the decision " 'clearly erroneous' " only when we are " 'left with the definite and firm conviction that a mistake has been committed.' " *Id.* at 69 (quoting *Ancheta*, 77 Wn.2d at 259-60).

[13] The reviewing court considers issues of law de novo. RCW 7.16.120(3).

[14] *Nguyen v. Dep't of Health*, 144 Wn.2d 516, 522-23, 29 P.3d 689 (2001) (quoting *Mathews*, 424 U.S. at 332), *cert. denied*, 535 U.S. 904 (2002).

additional procedural safeguards, and (4) the government interest involved.[15] Due process essentially requires the opportunity to be heard "at a meaningful time and in a meaningful manner."[16] The process followed meets minimum constitutional requirements when it provides a citizen with sufficient safeguards in a state action.[17]

A. *Standard of Proof before the Board*

¶11 Mansour argues that the board did not even use a "mere preponderance" standard of proof, but rather simply acted in an appellate capacity to determine whether Animal Control's order was arbitrary and capricious. He asserts that the intermediate "clear preponderance" standard is required here, where there is a risk of erroneous deprivation of an invaluable family-type relationship tantamount to that at stake in a parental termination proceeding. The county argues that the board correctly determined that Animal Control did not act arbitrarily and capriciously when it issued the removal order. It further contends that substantial evidence supported the board's findings of fact no matter what standard of proof it used.

¶12 An adequate standard of proof is a mandatory safeguard.[18] The standard of proof instructs the fact finder " 'concerning the degree of confidence our society thinks he should have in the correctness of the factual conclusions for a particular type of adjudication.' "[19] The nature and importance of the interest subject to erroneous deprivation establishes the minimum standard of proof required to satisfy due process.[20] "That standard allocates the risk of error between the litigants: it is indicative of the relative

---

[15] *Mathews*, 424 U.S. at 335.

[16] *Rabon* II, 107 Wn. App. at 743 (citing *Mathews*, 424 U.S. at 333).

[17] *Nguyen*, 144 Wn.2d at 524.

[18] *Id.*

[19] *Id.* (internal quotation marks omitted) (quoting *Addington v. Texas*, 441 U.S. 418, 423, 99 S. Ct. 1804, 60 L. Ed. 2d 323 (1979)).

[20] *Id.*

importance attached to the ultimate decision. Thus, the more important the decision, the higher the burden of proof."[21]

¶13 Neither the King County Code nor the board rules require a particular standard of proof in a removal proceeding. Nor does the record indicate what standard the board applied here. The superior court ruled that Animal Control had to prove by "substantial evidence that it did not act arbitrarily or capriciously when it issued the Notice and Order . . . ." But this is not an evidentiary standard. Rather, it is the standard by which the superior court and this court review the board's decision.[22] It is not the proper standard for the board to use in its role as the ultimate fact finder.[23]

¶14 As Mansour points out, his first opportunity to offer evidence and be heard was before the board. Before significantly impacting Mansour's interest in Maxine by forcing him to move out of King County to maintain their relationship and avoid her euthanization, due process requires that Animal Control prove more than that it simply did not act arbitrarily and capriciously. We recognize that the bond between pet and owner often runs deep and that many people consider pets part of the family. Other Washington counties require that when an owner appeals an Animal Control order, the agency must prove by a preponderance of the evidence that the dog is dangerous.[24] A purely monetary dispute between private parties would warrant greater protection than King County advocates for removal hear-

---

[21] *Id.* (citation omitted).

[22] *State v. MacKenzie*, 114 Wn. App. 687, 696-97, 60 P.3d 607 (2002) (citing *State v. Ford*, 110 Wn.2d 827, 828-30, 755 P.2d 806 (1988)).

[23] The board must afford an appellant numerous trial-type procedures, including offering evidence, and examining and cross-examining witnesses. King County Bd. of Appeals R. 25(C)(3)-(4). The board must make written findings of fact and conclusions of law. King County Bd. of Appeals R. 25(F).

[24] *See, e.g.,* CLALLAM COUNTY CODE 17.03.030(2); JEFFERSON COUNTY CODE 6.05.380(2)(f); SAN JUAN COUNTY CODE 6.08.094(D); SNOHOMISH COUNTY CODE 9.12.101(3); WHATCOM COUNTY CODE 6.04.100(C). "Vicious" appears to be the King County equivalent of "dangerous."

ings.[25] The superior court erred in ruling that due process requires only that Animal Control prove to the board that the removal order was not arbitrary and capricious.

¶15 The lowest legal standard of proof requires the proponent to prove its case by a preponderance of the evidence. The preponderance standard applies to most civil cases.[26] The highest standard of proof, beyond a reasonable doubt, is required in criminal cases where the defendant's liberty interest is so great that we must minimize the chance of erroneous deprivation as much as possible.[27] We apply an intermediate standard, a clear preponderance of the evidence or clear and convincing evidence, in certain civil cases " 'to protect particularly important individual interests,' that is, those interests more important than the interest against erroneous imposition of a mere money judgment."[28] Civil proceedings in which we require the intermediate standard include involuntary commitment, fraud, quasi-criminal wrongdoing, and situations where the defendant's reputation would be tarnished.[29] On this spectrum of proof standards, we hold that an agency seeking to enforce a removal order must prove both the violation and the remedy it has imposed by a preponderance of the evidence.

¶16 A determination of removal does not sever the relationship between dog and owner; as long as Mansour moves out of King County, his relationship with Maxine can continue uninterrupted. While this is certainly a burden on Mansour, it leaves it up to him to determine whether the relationship can continue. Even a dependency proceeding, where a parent may lose custody of a child, requires proof

---

[25] A preponderance of evidence is required in monetary disputes between private parties. *Nguyen*, 144 Wn.2d at 524.

[26] *Id.*

[27] *Id.*

[28] *Id.* at 524-25 (quoting *Addington*, 441 U.S. at 424).

[29] *Id.* (citing *Addington*, 441 U.S. at 424).

only by a preponderance of the evidence.[30] The government's decision to remove a child, even if temporary, cannot warrant less protection than the government's order to remove a dog, no matter how beloved, to another county. And although we have recognized the emotional importance of pets to their families, legally they remain in many jurisdictions, including Washington, property.[31]

¶17 On this record, we cannot presume that the board applied at least a preponderance of the evidence standard of proof. "With respect to the risk of erroneous deprivation in this proceeding, there is little solace to be found in the availability of judicial review which is high on deference but low on correction of errors. *Appellate review cannot cure an inadequate standard of proof.*"[32] Although Mansour's attorney argued to the board that the county had the burden of proving its case by a preponderance of the evidence, the board never indicated that it adopted that standard. It simply issued findings of fact and then stated that it "upheld" Animal Control's removal order. We cannot review the board's findings and conclusions when it may have used a fundamentally wrong standard in making those findings and reaching those conclusions. We do not know whether the board would have weighed the evidence differently had it applied the proper standard.[33] And given

---

[30] *In re Dependency of Chubb*, 46 Wn. App. 530, 731 P.2d 537 (1987). We recognize that permanent termination of the parent/child relationship requires clear and convincing proof. RCW 13.34.190(1)(a); *In re Dependency of K.S.C.*, 137 Wn.2d 918, 925, 976 P.2d 113 (1999) (citing RCW 13.34.190; *In re Dependency of K.R.*, 128 Wn.2d 129, 140-41, 904 P.2d 1132 (1995)).

[31] *See Pickford v. Masion*, 124 Wn. App. 257, 98 P.3d 1232 (2004) (declining to award loss of companionship damages for death of a pet). "In Washington, damages are recoverable for the actual or intrinsic value of lost property but not for sentimental value." *Id.* at 263 (citing *Mieske v. Bartell Drug Co.*, 92 Wn.2d 40, 45-46, 593 P.2d 1308 (1979)).

[32] *Nguyen*, 144 Wn.2d at 530 (emphasis added) (citation omitted) (citing *Santosky v. Kramer*, 455 U.S. 745, 757 n.9, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982)).

[33] *See Santosky*, 455 U.S. at 770 ("We, of course, express no view on the merits of petitioners' claims. At a hearing conducted under a constitutionally proper standard, they may or may not prevail. Without deciding the outcome under any of the standards we have approved, we vacate the judgment of the Appellate

that the county argued for and the trial court sanctioned an entirely inadequate standard of proof, it is probable that the board also failed to require of Animal Control the proper quantum of proof. The lack of a clearly ascertainable adequate standard of proof violated Mansour's procedural due process rights.

B. *Subpoena Powers*

¶18 Mansour argues that procedural due process also required that he be able to subpoena witnesses and records. He contends that in order to effectively cross-examine Dr. Fry and rebut the evidence against him, he needed to subpoena Lacie's veterinary records and Steve Wegener and Catherine Usher. The county argues that Mansour's hearing followed board rules, and he was afforded the same process deemed acceptable in *Rabon v. City of Seattle* (*Rabon* I).[34]

¶19 *Rabon* I does not apply here. Rabon's dogs had already been found to be vicious in Rabon's criminal trial for harboring vicious animals, which necessarily included maximum due process protections. Because the Seattle Municipal Code did not mandate that a "vicious" animal be destroyed, the Supreme Court held that although Rabon could not challenge the jury's viciousness finding, he was entitled to a hearing in which he could argue that his vicious dogs should not be destroyed. In *Rabon* II,[35] Rabon argued that the destruction hearing required greater process than was provided. We held that "a person's interest in keeping a vicious dog as a pet is [not] so great as to require a more careful procedure than is provided by Seattle's administrative and hearing process."[36]

---

Division and remand the case for further proceedings not inconsistent with this opinion." (footnote omitted)).

[34] 135 Wn.2d 278, 295, 957 P.2d 621 (1998).

[35] 107 Wn. App. 734.

[36] *Id.* at 744. The Seattle Municipal Code (SMC) provides that "every party shall have the right of cross-examination of witnesses who testify, and shall have the right to submit rebuttal evidence." SMC 3.02.090(M).

¶20 Here, unlike in *Rabon* II, Mansour had not already had a contested hearing to determine whether Maxine was vicious. At the time the board heard his case, Mansour's interest in keeping Maxine was greater than Rabon's interest in keeping what a jury had determined was a vicious animal. Thus, we must decide whether there was a risk of an erroneous deprivation of Mansour's interest through the procedures used at the hearing and whether additional safeguards would have lowered that risk.

¶21 The board rules require that an appellant have the right to have counsel, offer witnesses and evidence in his behalf, examine and cross-examine witnesses, impeach any witness, rebut evidence against him, and choose to present his case before or after the respondent's presentation.[37] These are fine as far as they go. But the board attorney's refusal to permit discovery or subpoenas significantly limited Mansour's ability to offer witnesses and evidence on his behalf, cross-examine Dr. Fry, or rebut the evidence against him. He could not call his own expert to dispute Dr. Fry's causation opinion without access to Lacie's veterinary records.[38] He could not effectively dispute some of the county's evidence that Maxine was a neighborhood nuisance because he could not subpoena Wegener and Usher to impeach or rebut their earlier inculpatory statements. Even a person disputing a minor civil infraction like a parking ticket has the right to subpoena witnesses.[39] The lack of subpoena power prejudiced Mansour's ability to present his case and argue for a less severe penalty.

¶22 The county asserts that it was bound by the same limitations. But it never sought subpoena power, and it was

---

[37] King County Bd. of Appeals R. 25(C).

[38] At oral argument before this court, Mansour's attorney said he intended to use his own expert had they received Lacie's veterinary records. He submitted a declaration to the board stating that after being told he could not subpoena the veterinary records, he contacted the Juanita Veterinary Hospital and Cascade Veterinary Specialists directly but was told that the O'Briens refused to release any information about Lacie.

[39] *See* IRLJ 2.6(a)(2), 3.3(c).

not the party facing the loss of a significant interest. Given the restrictions on Mansour's ability to present his case, the risk of erroneous deprivation of Mansour's interest in Maxine is significant. Allowing Mansour and other pet owners to subpoena witnesses and records would substantially minimize this risk without imposing any burden on the county. Requiring Mansour to move out of King County to keep Maxine alive is a severe enough sanction to warrant more formal procedural safeguards. Due process requires that a pet owner contesting a removal order be able to subpoena witnesses and records.[40]

## II. *Notice*

¶23 Mansour further argues that he received insufficient notice because the removal order identified the wrong authority for removal. He contends the removal order is a charging document, and because he challenged the document's defects before the hearing and they were never cured, the removal order should be dismissed.[41] The county argues that the warning notices previously issued to Mansour adequately notified him that a bite or attack could result in removal. It also contends the removal order cited the correct statute several times, and Mansour must have had adequate notice since he appeared at the hearing with an attorney ready to proceed.

¶24 Just because Mansour knew the county could remove Maxine if she bit or attacked a domestic animal does not mean he had adequate notice of what the county had to prove in order to remove her. A fundamental tenet of due process is notice of the charges or claims against which one must defend.[42] Removal authority is found in three provisions of the King County Code:

---

[40] Mansour also argues that Maxine's removal under KCC 11.04.290(A) violated his substantive due process rights. Because Mansour was unable to present his full case at the board hearing, we cannot address this issue. We do not have all the facts before us.

[41] Mansour challenged the removal order's sufficiency several times.

[42] " 'An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under

11.04.290(A)(2)(e), 11.04.290(B)(1), and 11.04.290(B)(2). Based on the language of the removal order, it is unclear under which section of the ordinance Animal Control purported to remove Maxine. The first paragraph of the removal order states: "This letter is official notification to you that ... 'Maxine Mansour' ... is in violation of [KCC] 11.04.290(b) ...."[43] Later it states that Maxine also violated RCW 16.08.090 and that animals "declared in violation of RCW 16.08.090 and/or King County Code 11.04.230 may be kept in King County only upon compliance with the requirements set by King County pursuant to King County Code 11.04.290." But at the hearing, Sergeant David Morris, representing Animal Control, began his argument by stating that the director "in this Notice and Order of Removal is ordering [Maxine] to be removed pursuant to [KCC 11.04.290(A)(2)(e)]."

¶25 Not only did the removal order never cite any portion of KCC 11.04.290(A), but it explicitly cited "11.04.290(b)" [sic].[44] Further, nowhere in the removal order is Maxine referred to as "vicious," the finding the director must make in order to invoke subsection (A)'s requirements.[45] Only in the warning notice issued after the Lacie incident is there any indication that Animal Control was investigating Maxine as a "vicious" animal, and even then the warning notice only informed Mansour that someone had complained that Maxine was "vicious." It was not an official finding by the director.

---

all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *City of Redmond v. Arroyo-Murillo*, 149 Wn.2d 607, 617, 70 P.3d 947 (2003) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950)).

[43] As there is no KCC 11.04.290(b), we presume Animal Control meant KCC 11.04.290(B), which provides removal authority under certain conditions.

[44] Maxine could not be removed under KCC 11.04.290(B) because Animal Control did not find that (1) Mansour had received three notices and orders of violation within a one-year period (KCC 11.04.290(B)(1)) or (2) Maxine had bitten, attacked, or attempted to bite one or more persons two or more times within a two-year period (KCC 11.04.290(B)(2)).

[45] KCC 11.04.290(A).

¶26 The King County Code does not require that a removal order cite the relevant authority for a violation. It only requires that the director, after finding an animal in violation of chapter 11.04 KCC, issue a "brief and concise description of the conditions" for finding the violation.[46] This is insufficient to satisfy the fundamental due process requirement for notice of the charges.[47] While Mansour had notice that the county could remove Maxine if she bit or attacked a domestic animal, he was entitled to know ahead of time exactly what the county needed to prove at the board hearing. If in fact it could not prove that Maxine violated a code provision that supported the removal order, he was entitled to know that in time to move for dismissal at the board level.[48] It is not unduly burdensome to require the county to notify an owner of the specific ordinance or statute it is invoking to support its removal authority.

III. *Summary Judgment*

¶27 Mansour argues that the superior court erred in granting the county's summary judgment motion. We review summary judgments de novo, performing the same inquiry as the trial court.[49] Summary judgment is proper only when there is no genuine issue about any material fact and the moving party is entitled to judgment as a matter of law.[50] Given that the board hearing lacked fundamental attributes of due process, the superior court erred in granting the county's summary judgment motion.

---

[46] KCC 11.04.260(B)(3).

[47] The county does not dispute that the removal order should be treated the same as a charging document in a criminal case. *State v. Johnson*, 119 Wn.2d 143, 149-50, 829 P.2d 1078 (1992). But we need not decide that question because, under any standard, it failed to provide adequate notice.

[48] Given what we can discern from the record, it appears that dismissal motion on grounds of improper notice could be successful.

[49] *Jones v. Allstate Ins. Co.*, 146 Wn.2d 291, 300, 45 P.3d 1068 (2002).

[50] CR 56(c).

## ATTORNEY FEES

██ ██ ¶28 Mansour requests attorney fees on appeal under RAP 18.1 on the equitable basis that his argument protects constitutional principles affecting thousands of dog owners in King County. Washington courts follow the American rule in not awarding attorney fees as costs unless authorized by contract, statute, or recognized equitable exception.[51] One recognized equitable exception is the protection of constitutional principles.[52] However, this exception is narrowly construed,[53] and courts have never recognized it as an independent equitable exception to the American rule.[54] Instead, it has been recognized only as a variation on the common fund theory,[55] where the prevailing party challenged an unconstitutional expenditure of public funds.[56] Mansour does not challenge an unconstitutional expenditure of public funds, and we have no legal precedent on which to base an expansion of the exception. We therefore deny his request for attorney fees.

¶29 We reverse and remand to the Board of Appeals. If the county chooses to pursue this case on remand, the proceedings must comport with the due process requirements discussed in this opinion.

GROSSE and ELLINGTON, JJ., concur.

---

[51] *City of Seattle v. McCready*, 131 Wn.2d 266, 274, 931 P.2d 156 (1997) (citing *Rettkowski v. Dep't of Ecology*, 128 Wn.2d 508, 514, 910 P.2d 462 (1996); *State ex rel. Macri v. City of Bremerton*, 8 Wn.2d 93, 113-14, 111 P.2d 612 (1941)).

[52] *Miotke v. City of Spokane*, 101 Wn.2d 307, 338, 678 P.2d 803 (1984).

[53] *Id.* at 339 (citing *Seattle Sch. Dist. No. 1 v. State*, 90 Wn.2d 476, 545, 585 P.2d 71 (1978)).

[54] *McCready*, 131 Wn.2d at 276.

[55] *Id.* (citing *Weiss v. Bruno*, 83 Wn.2d 911, 914, 523 P.2d 915 (1974)).

[56] *Id.*