[No. 58649-1-I.   Division One.   October 1, 2007.]

ADRIAN LUNGU, *Petitioner*, v. THE DEPARTMENT OF LICENSING, *Respondent*.

486

*Diego J. Vargas* (of *Fox Bowman & Duarte*), for petitioner.

*Robert M. McKenna, Attorney General, Jay D. Geck, Deputy Solicitor General,* and *Toni M. Hood, Assistant,* for respondent.

¶1 PER CURIAM — Adrian Lungu appeals a superior court order on RALJ appeal affirming the decision of the state Department of Licensing (Department) suspending his driver's license for 90 days. He argues that he was denied due process during his hearing when the Department did not heed his request to subpoena the state toxicologist to testify at the hearing. Because he received all process he was due under the circumstances of this case, we affirm.

¶2 Officer Marcia Harnden stopped Lungu in his vehicle one evening for erratic driving. After smelling alcohol on his breath and conducting field sobriety tests, Officer Harnden arrested Lungu on suspicion of driving under the influence of alcohol. At the police station, Lungu provided two breath samples that exceeded the legal limit. Based on the officer's sworn report of the arrest and the breath test results, the Department suspended Lungu's driver's license for 90 days. He requested a hearing to contest the suspension.

¶3 Prior to the hearing, Lungu received copies of the Department's proposed evidence. This consisted of Officer Harnden's written report, as well as a written declaration of the state toxicologist, Dr. Barry Logan. The declaration listed which instruments and thermometers are approved in Washington for breath tests. Lungu submitted a written request for the hearing examiner to subpoena Dr. Logan,

including several questions Lungu planned to ask Dr. Logan at the hearing. The hearing examiner denied the request.

¶4 At the hearing, the two exhibits were admitted. Officer Harnden testified, and Lungu cross-examined her. At the conclusion of the hearing, the examiner affirmed the suspension of Lungu's driver's license. Lungu appealed that decision to the superior court on RALJ appeal, and the superior court affirmed the Department's decision. Lungu sought discretionary review, which we granted.

## DUE PROCESS

¶5 Lungu argues that he was denied due process of law when he was not permitted to call Dr. Logan as a witness at his hearing. We disagree.

¶6 The suspension of a driver's license is a deprivation of a property interest that must comply with due process.[1] Due process is a flexible concept and should be applied based on the demands of the particular situation.[2] At a minimum, due process requires notice and the right to be heard at a meaningful time and in a meaningful manner.[3] Courts look to three factors in determining what process is due under the circumstances:

> (1) the private interest to be protected; (2) the risk of erroneous deprivation of that interest by the government's procedures; and (3) the government's interest in maintaining the procedures.[4]

¶7 In an administrative hearing for license revocation, due process includes the right to cross-examine certain witnesses, which necessarily includes the right to

---

[1] *Gibson v. Dep't of Licensing*, 54 Wn. App. 188, 194, 773 P.2d 110 (1989).

[2] *Morris v. Blaker*, 118 Wn.2d 133, 144, 821 P.2d 482 (1992).

[3] *Olympic Forest Prods., Inc. v. Chaussee Corp.*, 82 Wn.2d 418, 422, 511 P.2d 1002 (1973).

[4] *Blaker*, 118 Wn.2d at 144-45 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)).

subpoena those witnesses.[5] In order to determine whether additional safeguards would have lowered the risk of erroneous deprivation of this right, we ask whether the lack of subpoena power prejudiced Lungu's ability to present his case.[6] There is no constitutional right to present irrelevant evidence in one's defense.[7] Whether the hearing in this case violated Lungu's right to due process is an issue of law we review de novo.[8]

¶8 Lungu attempted to challenge the results of the breath tests offered as evidence against him by calling the state toxicologist as a witness. According to statute, a breath test performed with "any instrument approved by the state toxicologist" will be admissible at trial if the Department produces prima facie evidence of each of the following elements:

(i) The person who performed the test was authorized to perform such test by the state toxicologist;

(ii) The person being tested did not vomit or have anything to eat, drink, or smoke for at least fifteen minutes prior to administration of the test;

(iii) The person being tested did not have any foreign substances, not to include dental work, fixed or removable, in his or her mouth at the beginning of the fifteen-minute observation period;

(iv) Prior to the start of the test, the temperature of the simulator solution as measured by a thermometer approved of by the state toxicologist was thirty-four degrees centigrade plus or minus 0.3 degrees centigrade;

(v) The internal standard test resulted in the message "verified";

(vi) The two breath samples agree to within plus or minus ten percent of their mean to be determined by the method approved by the state toxicologist;

---

[5] *Lytle v. Dep't of Licensing*, 94 Wn. App. 357, 361-62, 971 P.2d 969 (1999); *Mansour v. King County*, 131 Wn. App. 255, 269, 128 P.3d 1241 (2006).

[6] *See Mansour*, 131 Wn. App. at 269.

[7] *See State v. Maupin*, 128 Wn.2d 918, 925, 913 P.2d 808 (1996).

[8] *Mansour*, 131 Wn. App. at 263.

(vii) The simulator external standard result did lie between .072 to .088 inclusive; and

(viii) All blank tests gave results of .000.[9]

Once prima facie evidence has been shown and the test results properly admitted, the subject of the test may challenge the reliability of the test. But such challenges affect only the weight to be given the results, not their admissibility.[10]

¶9 Here, the hearing examiner admitted the state toxicologist's declaration. The declaration listed the instrument used in this case, the DataMaster CDM, as one of the two devices "approved" in Washington. The declaration also stated that a wet bath simulator containing a mercury thermometer is attached to each approved breath-testing instrument. Finally, the declaration stated that persons who received their certification to conduct breath tests in Washington are certified to conduct those tests with the approved devices.

¶10 The hearing examiner also admitted the arresting officer's written report. Her report and testimony at the hearing supplied prima facie evidence of the eight elements listed in the statute. For example, her report stated that she was authorized by the state toxicologist to perform breath tests and she properly followed all of the required procedures. Thus, the breath test results were properly admitted under RCW 46.61.506(4)(a). Challenges would have been limited to the weight of that evidence.

¶11 Calling the state toxicologist as a witness would not have aided Lungu's challenge of the test results in this case. Lungu sought to ask several questions of Dr. Logan relating to the specific equipment used in his case. For example, he would have asked which simulator and thermometer were used for the specific equipment and whether Dr. Logan approved the specific DataMaster CDM used. However,

---

[9] RCW 46.61.506(4)(a).

[10] RCW 46.61.506(4)(c).

nothing in the state toxicologist's declaration suggests he has personal knowledge about the specific instruments used to test Lungu. In fact, certified breath test technicians, not the state toxicologist, maintain the individual instruments.[11] Information about a particular machine is also available to the public upon request and on the Internet.[12]

¶12 Lungu also sought to ask Dr. Logan questions about Officer Harnden's authority to conduct breath tests. She was present at the hearing, and there was evidence in the record that she was approved to conduct breath tests. Yet Lungu failed to cross-examine her about her certification when she testified. Information about persons certified to perform the tests is also available from the state toxicologist upon request.[13] In light of this record, Lungu has failed to show how Dr. Logan's testimony was required to challenge the reliability of the test results.

¶13 Lungu also sought to question Dr. Logan about the meaning of the word "approved" as it relates to statutes at issue in this case and why he approved certain equipment. The meaning of the word "approved" for purposes of relevant statutes is an issue of law, not an issue of fact. Moreover, the record establishes that Dr. Logan approved certain devices, as the law required him to do. Any further inquiry into the meaning of the statutory language was irrelevant to Lungu's case.

¶14 Lungu argues that Lytle v. Department of Licensing[14] compels a different result. We disagree.

¶15 There, the court held that the appellant should have been allowed to cross-examine the arresting officer and two other officers who observed some of the events that transpired.[15] Here, Lungu had the opportunity to examine

---

[11] WAC 448-16-110.

[12] WAC 448-16-140 (referencing the web site).

[13] WAC 448-16-090.

[14] 94 Wn. App. 357, 971 P.2d 969 (1999).

[15] Id. at 362.

those witnesses with personal knowledge of the events that transpired. We do not read *Lytle* to support the proposition that there is a due process right to subpoena any potential witness, regardless of whether such a witness has relevant information.

¶16 We are mindful of *Lytle*'s stated concern that a petitioner may face a prima facie case against him or her consisting entirely of written documents.[16] But where, as here, Lungu had the testimony of those witnesses with personal knowledge of the events in this case and testimony of the state toxicologist would not have provided relevant information, such concern does not exist.

¶17 Related to his due process argument, Lungu argues that the hearing examiner violated WAC 308-103--150 by completing the record without allowing cross-examination. That regulation gives the examiner the authority to request and receive exhibits to complete the record "subject to full opportunity for cross-examination and rebuttal by the petitioner." Because Dr. Logan's declaration was one such exhibit, Lungu argues that he should have been able to cross-examine its author. But just as Lungu failed to show prejudice under a traditional due process analysis, he fails to establish how this alleged technical error prejudiced his case.

¶18 Lungu argues that a prima facie showing under RCW 46.61.506(4)(a) requires that the machine be tested and maintained pursuant to the procedures set forth in the state toxicologist's policies and procedures manual. He is incorrect. The "implementation and maintenance" standards in the manual are not mentioned in the statute, and are not a prerequisite to admissibility.[17] If Lungu wished to raise the issue as one of the weight to be given the test results, he should have subpoenaed the person or persons who actually tested and maintained the machines, not the state toxicologist.

---

[16] *See id.*

[17] *See* Appeal Board R. at 8-22 (excerpts from the manual).

¶19 We affirm the superior court's order affirming the Department's determination.

Review denied at 163 Wn.2d 1051 (2008).