[No. 41055-9-II.   Division Two.   November 29, 2011.]

HEIDI I. DOWNEY, *Individually and on the Relation of all Similarly Situated Taxpayers, Appellant,* v. PIERCE COUNTY ET AL., *Respondents.*

154

*Adam P. Karp* (of *Animal Law Offices*), for appellant.

*Mark E. Lindquist, Prosecuting Attorney*, and *Cort O'Connor, Deputy*, for respondents.

¶1 JOHANSON, J. — Heidi I. Downey appeals a summary judgment order (1) affirming a hearing examiner's decision finding that her dog is a dangerous animal under Pierce County Code (PCC) 6.07.015[1] and (2) dismissing her Uniform Declaratory Judgment Act (UDJA)[2]/taxpayers' derivative action[3] challenging Pierce County's (County) dan-

---

[1] Former PCC 6.07.015 (2008) may have applied to Downey's case. Pierce County amended this ordinance in 2009, but the amendments do not change anything related to the issues before us. Accordingly, we cite to the 2009 version of the ordinance throughout this opinion.

[2] Ch. 7.24 RCW.

[3] "A taxpayers' derivative suit is an action brought by a taxpayer on behalf of himself or herself and as representative of a class of similarly situated taxpayers to seek relief from illegal or unauthorized acts of public officials." *Wash. Pub. Trust Advocates v. City of Spokane*, 117 Wn. App. 178, 181, 69 P.3d 351 (2003) (citing 74

gerous animal declaration (DAD) proceedings. In regard to her UDJA/taxpayers' derivative claims, she argues that the County's DAD process is facially unconstitutional because (1) it requires the person challenging a DAD to pay a fee to obtain an evidentiary hearing and further review, (2) it does not provide an adequate standard of proof, and (3) it does not allow for subpoena power at the evidentiary hearing.[4] We agree that charging a fee to obtain adversarial/ evidentiary review of a DAD violates due process and that the County's DAD ordinance does not establish an adequate standard of proof. But we hold that Downey has failed to show that the trial court erred in dismissing her other UDJA/taxpayers' derivative claim challenging the lack of subpoena power at the auditor's hearing level of review.

¶2 As to Downey's arguments related to this specific DAD, which we address in the unpublished portion of this opinion, we hold that under the appropriate standard of proof, the evidence was insufficient to support the finding that Downey's dog attacked her neighbor's dog without provocation, and we reverse the DAD with prejudice.

## FACTS

### Dangerous Dog Declaration and Auditor's Designee Review

¶3 On April 7, 2009, Downey's Great Pyrenees-cross dog, Blizzard, allegedly "grabbed" Tina Steiner's seven pound

---

Am. Jur. 2d *Taxpayers' Actions* § 1 (2001) (citing *State ex rel. Conrad v. Langer*, 68 N.D. 167, 277 N.W. 504, 508 (1937))). Taxpayers' derivative suits are recognized at common law and by the Washington courts. *Wash. Pub. Trust Advocates*, 117 Wn. App. at 182 (citing *Crampton v. Zabriskie*, 101 U.S. 601, 609, 25 L. Ed. 1070 (1879) and quoting *Robinson v. City of Seattle*, 102 Wn. App. 795, 804-05, 10 P.3d 452 (2000)). On appeal, the parties do not dispute any UDJA/ taxpayers' derivative action standing issues.

[4] Although Downey mentions a facial "lack of probable cause" issue in her issue statements, she addresses "probable cause" only in relation to her particular DAD and does not present any argument related to this issue in the section of her brief relating to her facial constitutional challenges. Br. of Appellant at 18. Accordingly, we do not address whether the animal control officer is required to prove probable cause to a neutral magistrate before issuing a DAD as part of Downey's UDJA/taxpayers' derivative action.

Pomeranian, Kayla, injuring her so severely that she had to be euthanized. Clerk's Papers (CP) at 80. More than four months later, after initially being unable to identify Blizzard based on Steiner's description of the dog that had attacked Kayla, Pierce County Animal Control Officer Jody Page declared Blizzard a "dangerous animal" and issued a DAD. Administrative Record (AR) (Apr. 15, 2010) at 29 (capitalization omitted). The DAD form advised Downey that she could appeal the DAD to the auditor or auditor's designee (auditor) by filing a written request and paying a $250 "review fee."[5] AR (Apr. 15, 2010) at 29.

¶4 Paying the $250 review fee required under PCC 6.07.015(E)(1), Downey sought review of the DAD before the auditor. The auditor held an informal, unrecorded hearing on the matter. In an amended administrative review decision,[6] the auditor upheld the DAD, finding that Blizzard had "[i]nflicted severe injury on or kill[ed] an animal without provocation while the animal inflicting the injury [was] off the property where its owner resides." AR (Apr. 15, 2010) at 70.

---

[5] The notice also advised Downey that instead of appealing, she could either (1) relinquish Blizzard or (2) purchase a $500 dangerous animal permit, tattoo or microchip Blizzard for identification purposes, and otherwise comply with chapter 6.07 PCC's dangerous animal requirements. In addition, the notice advised Downey that during the appeal process, Blizzard could not be outside a "proper enclosure" unless he was securely leashed or chained, humanely muzzled, and under physical restraint of a responsible person. AR (Apr. 15, 2010) at 29 (capitalization omitted). It further advised her that if she violated these conditions, the County could seize Blizzard.

[6] Throughout this part of the review process, the County erroneously referred to the matter as a review of a "Potentially Dangerous Animal Declaration" (PDAD), rather than a review of a DAD. *See* AR (Apr. 15, 2010) at 57, 61. In fact, the auditor's original administrative review decision purported to uphold a PDAD and contained findings supporting that decision. The auditor later filed an amended decision correcting this error and upholding the DAD—the amended decision also contained a new factual finding supporting the auditor's new DAD conclusion. In this appeal, Downey raises several issues related to this apparent misidentification of the DAD as a PDAD and to the auditor's amended decision. Because we reverse the DAD for insufficient evidence, we do not reach these issues.

HEARING EXAMINER APPEAL

¶5 Paying a required $500 appellate review fee, Downey then "appealed" the auditor's decision to a hearing examiner. The hearing examiner reviewed the DAD de novo, considered the materials that the auditor had before him, and heard additional live testimony. But because there was no recording or transcription of the auditor's hearing, the hearing examiner could not consider any testimony offered at the auditor's hearing.

¶6 Steiner was the only person who testified about the attack on Kayla. She testified that on the morning of the incident, she had turned Kayla loose to allow her to urinate after first looking around and not "see[ing] anything" in the immediate area. CP at 80. Steiner then turned her back to Kayla to put one of her other dogs back into the dog pen. CP at 80. While her back was turned, Steiner heard "something," she was not sure if it was Kayla "barking or a yip, but something." CP at 80-81. When she turned around, she saw that Downey's "dog had grabbed [Kayla] by the stomach and was running with [her]." CP at 80. Steiner ran after the dogs, yelling, "Kayla," and the other dog dropped Kayla. CP at 80.

¶7 Steiner was unsure where the other dog had come from, but she believed that the attack happened next to her carport. Steiner also indicated on a drawing of the surrounding properties that the attack took place well away from Downey's property, either on or close to an access easement crossing another neighbor's property. Although Steiner gave varying descriptions over time of the dog that had grabbed Kayla, at the hearing she identified Blizzard as the attacking dog.

¶8 Downey testified that her dogs were kenneled at the time of the attack. She also testified that Officer Page could not identify Blizzard from Steiner's initial descriptions and that it was not until several months after the incident that

Officer Page felt she had a sufficient identification to issue the DAD. Downey argued that Steiner did not see the incident and that Steiner's identification of Blizzard was incorrect, as evidenced by her descriptions of the attacking dog changing over time.

¶9 Officer Page also testified. She confirmed that (1) she could not identify the attacking animal based on Steiner's initial descriptions and (2) Steiner had reported that she did not see or hear the incident start.

¶10 The hearing examiner upheld the DAD, finding that Blizzard had attacked Kayla without provocation while off of Downey's property. Downey moved for reconsideration, challenging several of the hearing examiner's findings, including that the incident occurred off of Downey's property and that the attack was unprovoked, and raising several other issues related to the auditor's review. The hearing examiner issued written findings of fact and conclusions of law on the motion for reconsideration, noting that he had reviewed the DAD "de novo" and that he had applied the "preponderance of evidence" standard at the hearing. AR (Apr. 15, 2010) at 2. He then denied the motion for reconsideration, reiterating his original findings of fact.

### SUPERIOR COURT APPEAL AND UDJA/TAXPAYERS' DERIVATIVE ACTION

¶11 On April 1, 2010, Downey filed an amended complaint in Pierce County Superior Court appealing the DAD and bringing a UDJA/taxpayers' derivative action requesting injunctive and/or declaratory relief. In the first part of her complaint, Downey challenged the DAD on a variety of grounds, including that the evidence was insufficient to support the DAD, and she petitioned for return of her " 'appeal' costs and attorney's fees" related to the DAD proceedings. CP at 18. In the second part of her complaint (the UDJA/ taxpayers' derivative action), she argued, inter alia, that (1) PCC 6.07.015(E)(1)'s requirement that the

person challenging a DAD pay a fee for an initial evidentiary hearing violated due process, (2) PCC 6.07.015(E)(3)'s appellate fee requirement violated due process, and (3) PCC 6.07.015(E)(2) and (3) violated due process by failing to establish an adequate standard of proof and by not giving the auditor subpoena powers.

¶12 Downey moved for summary judgment on her UDJA/taxpayers' derivative claims. The superior court (1) denied Downey's summary judgment motion, (2) affirmed the hearing examiner's decision upholding the DAD, (3) found that Downey had "standing to seek the declaratory and injunctive relief requested under taxpayer derivative suit doctrine and the UDJA," and (4) concluded that Downey had not demonstrated that the challenged provisions were unconstitutional. CP at 216. The superior court dismissed all claims with prejudice. CP at 217. Downey appeals.

## ANALYSIS

### UDJA/Taxpayers' Derivative Claims

¶13 Downey challenges the superior court's summary judgment dismissal of her UDJA/taxpayers' derivative action claims. She argues that the County's dangerous animal ordinances violate due process because (1) PCC 6.07-.015(E)(1) requires the animal's owner to pay a fee for the first level of evidentiary review, which occurs during the auditor's review; (2) PCC 6.07.015(E)(3) requires the animal's owner to pay a fee for "appellate" review before the hearing examiner, which, in fact, appears to be a new evidentiary hearing rather than actual appellate review; (3) PCC 6.07.015 fails to establish an adequate standard of proof; and (4) PCC 6.07.015 does not provide for subpoena power at the first level of evidentiary review (the auditor's review). We hold (1) that because the ordinance requires payment before receiving an evidentiary hearing and (2)

the ordinance fails to establish an adequate standard of proof, the ordinance violates due process.

¶14 We review summary judgment orders by engaging in the same inquiry as the trial court. *Morin v. Harrell*, 161 Wn.2d 226, 230, 164 P.3d 495 (2007). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. CR 56(c). We consider all facts and reasonable inferences from them in the light most favorable to the nonmoving party. *Biggers v. City of Bainbridge Island*, 162 Wn.2d 683, 693, 169 P.3d 14 (2007). Where, as here, only legal questions are before us, we review those questions of law de novo. *Wash. State Farm Bureau Fed'n v. Gregoire*, 162 Wn.2d 284, 300, 174 P.3d 1142 (2007) (citing *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002)). Our review is limited to the facts and issues called to the trial court's attention, but we are "entitled to consider relevant law in deciding an issue, regardless of whether any party has cited it." *Rahman v. State*, 170 Wn.2d 810, 823-24, 246 P.3d 182 (2011) (citing *Ellis v. City of Seattle*, 142 Wn.2d 450, 459 n.3, 13 P.3d 1065 (2000)). We presume that ordinances are constitutional, and Downey has the burden of overcoming this presumption by establishing that the ordinance is unconstitutional beyond a reasonable doubt. *City of Pasco v. Shaw*, 161 Wn.2d 450, 458, 166 P.3d 1157 (2007), *cert. denied*, 552 U.S. 1275 (2008).

## A. Relevant Dangerous Animal and Administrative Review Provisions

¶15 PCC 6.07.015 establishes Pierce County's DAD procedures, including the "appeal" and evidentiary review processes. It provides, in relevant part:

    A.    The animal control authority shall have the ability to declare an animal as dangerous if there is *probable cause*

to believe the animal falls within the definitions set forth in Section 6.02.010 N.[7] The finding must be based upon:

1. The written complaint of a citizen who is willing to testify that the animal has acted in a manner which causes it to fall within the definition of Section 6.02.010 N; or

2. Animal bite reports filed with the County or the County's designee; or

3. Actions of the animal witnessed by any animal control officer or law enforcement officer; or

4. Other substantial evidence.

. . . .

E. If the owner of the animal wishes to object to the declaration of a dangerous animal:

1. The owner may request a hearing before the County or the County's designee by submitting a written request and *payment of a $250.00 administrative review fee* to the Auditor or the Auditor's designee within ten calendar days of receipt of the declaration, or within ten calendar days of the publication of the declaration pursuant to Section 6.07.015 C.3.

2. If the Auditor or the Auditor's designee finds that there is *insufficient evidence* to support the declaration, it shall be rescinded, and the restrictions imposed thereby annulled.

3. If the Auditor or the Auditor's designee finds *sufficient evidence* to support the declaration, the owner may appeal

---

[7] PCC 6.02.010(N) provides in part:

"Dangerous Animal" means any animal that when unprovoked:

. . . .

    2.   inflicts severe injury on or kills an animal without provocation while the animal inflicting the injury is off the property where its owner resides, . . .

. . . .

An animal shall not be declared dangerous if the threat, injury, or damage was sustained by a person who, at the time, was committing a willful trespass or other tort upon the property where the owner resides, or was tormenting, abusing, or assaulting the animal, or was committing or attempting to commit a crime.

such decision pursuant to the Pierce County Hearing Examiner Code, Chapter 1.22 PCC; provided that the appeal and the payment of an *appeal fee of $500.00* must be submitted to the Auditor or the Auditor's designee within ten calendar days after the finding of sufficient evidence by the Auditor or the Auditor's designee.

PCC 6.07.015 (emphasis added).

¶16 PCC 1.22.080(B)(2)(m), which applies to DADs through PCC 6.07.015(E)(3), gives County hearing examiners authority to hear dangerous dog declaration "appeals" after the auditor's review. PCC 1.22.080(C) provides that the hearing examiner has authority "to issue subpoenas compelling the appearance of witnesses and the production of documents." On review, "[a] decision of the Administrative Official shall be entitled to substantial weight," and the party appealing the decision "shall have the burden of presenting the evidence necessary to prove to the Hearing Examiner that the Administrative Official's decision was clearly erroneous." PCC 1.22.090(G).

## B. Fees

¶17 Downey first argues that PCC 6.07.015(E)(1) and (3)'s requirements that the animal owner pay fees to obtain review of a DAD by the auditor or the hearing examiner violate due process. We agree that due process requires access to an initial evidentiary hearing without charge.[8]

### 1. Auditor's Review

¶18 Downey argues that charging a fee for the first review of a DAD violates due process.[9] Examining this

---

[8] Because we agree that these provisions violate due process, we do not address Downey's equal protection arguments.

[9] We note that this issue is properly considered under the UDJA because it involves a justiciable controversy and, because reversal of the DAD does not provide for the return of Downey's administrative fees, Downey does not appear to have any other adequate remedy available to her to recover these fees. *See*

issue under the *Mathews v. Eldridge*[10] framework,[11] we agree.[12]

¶19 Procedural due process constrains governmental decision making that deprives individuals of liberty or property interests within the meaning of the due process clause. *Mathews*, 424 U.S. at 332. Due process is a flexible concept; the exact contours are determined by the particular situation. *Mathews*, 424 U.S. at 334. But an essential principle of due process is the right to notice and a meaningful opportunity to be heard. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S. Ct. 652, 94 L. Ed. 865 (1950)).

*Diversified Indus. Dev. Corp. v. Ripley*, 82 Wn.2d 811, 814-15, 514 P.2d 137 (1973) (a justiciable controversy is one in which there is "an actual, present and existing dispute, or the mature seeds of one," "between parties having genuine and opposing interests"; the controversy must involve direct and substantial interests, "rather than potential, theoretical, abstract or academic" interests; and "a judicial determination of" the issues "will be final and conclusive"); *Reeder v. King County*, 57 Wn.2d 563, 564, 358 P.2d 810 (1961) ("[P]laintiff is not entitled to relief by way of a declaratory judgment if, otherwise, he has a completely adequate remedy available to him.").

[10] 424 U.S. 319, 332, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).

[11] Throughout these proceedings, neither party has addressed this issue under the *Mathews v. Eldridge* framework, until we requested that they do so at oral argument. But, as noted above, we may "consider relevant law in deciding an issue, regardless of whether any party has cited it." *Rahman*, 170 Wn.2d at 823-24 (citing *Ellis*, 142 Wn.2d at 459 n.3).

[12] We note that Downey's reliance on *Boddie v. Connecticut*, 401 U.S. 371, 382-83, 91 S. Ct. 780, 28 L. Ed. 2d 113 (1971); *Putman v. Wenatchee Valley Medical Center, PS*, 166 Wn.2d 974, 216 P.3d 374 (2009); and *Bullock v. Superior Court*, 84 Wn.2d 101, 524 P.2d 385 (1974), alone is not sufficient to establish that the ordinance violates due process because those cases address whether the party *initiating* the proceeding can be required to pay a fee. Similarly, her reliance on *Griffin v. Illinois*, 351 U.S. 12, 76 S. Ct. 585, 100 L. Ed. 891 (1956), and *State v. Cushing*, 119 N.H. 147, 399 A.2d 297 (1979), is not persuasive because these cases are criminal cases involving substantially more significant liberty interests that are not present here, and *Griffin* also involves an appeal following a criminal conviction. Additionally, her reference to *Waicekauskas v. Burke*, 336 Ill. App. 3d 436, 784 N.E.2d 280, 271 Ill. Dec. 62 (2002), is misplaced because that case addressed whether an ordinance could penalize an individual for adjudicating a parking ticket; it does not involve a filing fee requirement. Finally, we do not consider the unpublished case Downey cites, *Louisville Kennel Club, Inc. v. Louisville/Jefferson County Metro Gov't*, No. 3:07-CV-230-S, 2009 WL 3210690, 2009 U. S. Dist. LEXIS 92328 (W.D. Ky. Oct. 2), because she did not file a copy of this unpublished opinion with her brief as GR 14.1(b) requires.

¶20 A meaningful opportunity to be heard means " 'at a meaningful time and in a meaningful manner.' " *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S. Ct. 1187, 14 L. Ed. 2d 62 (1965)). The United States Supreme Court "consistently has held that some form of hearing is *required* before an individual is finally deprived of a property interest." *Mathews*, 424 U.S. at 333 (emphasis added). Determining what process is due in a given situation requires consideration of (1) the private interest involved, (2) the risk that the current procedures will erroneously deprive a party of that interest, and (3) the governmental interest involved. *Mathews*, 424 U.S. at 335; *Spence v. Kaminski*, 103 Wn. App. 325, 335, 12 P.3d 1030 (2000).

¶21 Here, the private interests involved include (1) pet owners' interests in keeping their pets, which is arguably more than a mere economic interest because pets are not fungible;[13] (2) economic interests in not having to pay additional annual registration and inspection fees or acquire significant liability insurance in order to retain his or her property; and (3) potentially being subject to criminal liability for later violations of the County's dangerous animal restrictions.[14] Although these private interests are not as significant as the liberty interest at stake in a criminal action, they are not negligible.

¶22 Furthermore, the risk of erroneous deprivation of these interests under the current procedures if a pet owner does not or cannot pay the administrative fee for auditor's review is high because, at that point, the pet owner has had no opportunity to be heard, and the DAD has

---

[13] *See Sherman v. Kissinger*, 146 Wn. App. 855, 861, 195 P.3d 539 (2008) (dogs are, "as a matter of law," "characterized as personal property"); *Mansour v. King County*, 131 Wn. App. 255, 267, 128 P.3d 1241 (2006) ("[A]lthough we have recognized the emotional importance of pets to their families, legally they remain in many jurisdictions, including Washington, property.").

[14] *See* PCC 6.07.040 ("Any person who violates a provision of Chapter 6.07 shall, upon conviction thereof, be found guilty of a gross misdemeanor."); *see also* RCW 16.08.100.

not been subject to any adversarial or evidentiary testing. Moreover, before the government can deprive an individual of a property interest, it is *required* to afford her "some form of hearing." *Mathews*, 424 U.S. at 333.

¶23 Finally, although the County's interest in protecting the public from dangerous animals is strong, charging an administrative fee to offset the expense of conducting preliminary administrative proceedings and, arguably, control the number of meritless challenges to DADs, must be balanced against the risk that the fee could compromise the requirement that "some form of hearing is *required* before an individual is finally deprived of a property interest." *Mathews*, 424 U.S. at 333 (emphasis added). Requiring the responding party to pay a fee to access *any* review of a government initiated action could prevent many people from obtaining the review they are legally entitled to before deprivation of a property interest. *See Ortwein v. Schwab*, 410 U.S. 656, 659-60, 93 S. Ct. 1172, 35 L. Ed. 2d 572 (1973) (although requiring welfare recipients to pay filing fees to obtain further review of a state welfare decision reducing their benefits did not violate due process, the welfare recipients in question had already received predetermination evidentiary hearings that were not conditioned on the payment of any fee; noting that these preliminary hearings, "not conditioned on payment of any fee," were *required* under due process); *see also Boddie v. Connecticut*, 401 U.S. 371, 382-83, 91 S. Ct. 780, 28 L. Ed. 2d 113 (1971) (emphasizing that fees to initiate divorce proceedings could violate an indigent party's due process rights in part because "[t]he requirement that [the parties] resort to the judicial process is entirely a state-created matter").

¶24 Given the above factors, we hold that charging a fee to obtain an initial evidentiary review of a DAD violates due process because (1) the DAD impacts a pet owner's property and financial interests and (2) it potentially subjects a pet owner to future criminal sanctions. PCC 6.017.015(E)(1)'s administrative fee requirement is therefore unenforceable.

Accordingly, the County is directed to reimburse Downey's $250 administrative fee.

### 2. Hearing Examiner's Review

¶25 Downey further argues that PCC 6.07.015(E)(3)'s requirement that pet owners pay a $500 fee to obtain hearing examiner review violates due process. Again, we agree.

¶26 We recognize that there is no constitutional due process right to appeal civil cases involving "only property or financial interests." *In re Dependency of Grove*, 127 Wn.2d 221, 240, 897 P.2d 1252 (1995). But we do not consider the auditor's review here to be sufficient to meet the *Mathews* test because it is not a public review and there is no record of the proceedings that will allow for appellate review.[15] Because of the closed nature of the auditor's review and the failure to create a reviewable record, there is still a high risk of erroneous deprivation inherent in the approach the County's ordinance takes. The hearing examiner's "appeal" is in fact the first opportunity the pet owner has to engage in a true evidentiary/adversarial hearing that is subject to full judicial review, thus lowering the risk of erroneous depravation. Accordingly, under the law as it existed at the time of these proceedings, the hearing examiner's review is the first evidentiary review and not a true appellate review, and the $500 fee is inappropriate because it could preclude legitimate challenges to DADs. *See Ortwein*, 410 U.S. at 659-60; *see also Boddie*, 401 U.S. at 382-83.

¶27 Downey has established that PCC 6.07.015(E)(3)'s filing fee requirement violates due process.

---

[15] The private interests involved and the government's interest in covering costs of protecting the public from dangerous animals and avoiding unnecessary litigation are identical to factors we address above in the context of the auditor's review.

## C. Inadequate Standard of Proof

¶28  Downey next argues that PCC 6.07.015(E) violates due process because it does not provide adequate standards of proof. Again, we agree.

¶29  PCC 6.07.015(A) allows an animal control officer to issue a DAD if the officer determines that there is "probable cause" to believe the animal is a dangerous animal as defined by the county code. If the animal's owner challenges the DAD, PCC 6.07.015(E)(3) requires that the auditor review the case to determine if there is "sufficient evidence to support the declaration." PCC 6.07.015(E)(3) does not expressly require the auditor to determine de novo whether the County has met any specific standard of proof at the contested hearing.[16] Similarly, the hearing examiner review under PCC 1.22.090(G) requires only that the hearing examiner evaluate the auditor's determination to determine if it was "clearly erroneous"; it does not state what standard of proof the auditor was required to apply.[17]

¶30  We find *Mansour v. King County*, 131 Wn. App. 255, 128 P.3d 1241 (2006), a case from Division One of this court, instructive. In *Mansour*, the King County Code and board rules did not "require a particular standard of proof in a [dangerous animal] removal proceeding." *Mansour*, 131 Wn. App. at 265. Under King County's code and rules, King County "had to prove by 'substantial evidence that it did not act arbitrarily or capriciously when it issued the' " removal order. *Mansour*, 131 Wn. App. at 265. The *Mansour* court stated:

---

[16] We note that the County does not assert that any other rules or regulations supplement PCC 6.07.015(E) and further define the auditor's responsibilities.

[17] We recognize that here the auditor and hearing examiner, at the County's prompting, apparently applied the correct standard of proof and provided de novo review. But we are not addressing Downey's as applied challenges—her UDJA /taxpayers' derivative action raises the issue of whether the *applicable codes themselves* are facially unconstitutional.

An adequate standard of proof is a mandatory [due process] safeguard.[18] The standard of proof instructs the fact finder " 'concerning the degree of confidence our society thinks he should have in the correctness of the factual conclusions for a particular type of adjudication.' "[19] The nature and importance of the interest subject to erroneous deprivation establishes the minimum standard of proof required to satisfy due process.[20] "That standard allocates the risk of error between the litigants: it is indicative of the relative importance attached to the ultimate decision. Thus, the more important the decision, the higher the burden of proof."[21]

*Mansour*, 131 Wn. App. at 264-65. The court held that at a minimum, the County should have been held to "[t]he lowest legal standard of proof," the preponderance of the evidence standard. *Mansour*, 131 Wn. App. at 266. It further emphasized that "[a]*ppellate review cannot cure an inadequate standard of proof.*" *Mansour*, 131 Wn. App. at 267. We agree and adopt *Mansour*'s reasoning.

¶31 Here, although the ordinance requires the animal control officer to have probable cause to issue the DAD,[22] PCC 6.07.015(E)(3) requires only that the auditor determine if there was "sufficient evidence to support the [DAD]." Sufficiency of the evidence is a review standard; it is not a level of proof. Arguably, the ordinance could require the auditor to determine if the animal control officer had "probable cause" to issue the DAD, but that is not clear from the ordinance's language. Furthermore, to the extent the ordinance requires the auditor to determine if the animal control officer's probable cause determination was proper, probable cause is a preliminary determination that may

[18] (Citing *Bang D. Nguyen v. Dep't of Health Med. Quality Assurance Comm'n*, 144 Wn.2d 516, 524, 29 P.3d 689 (2001), *cert. denied*, 535 U.S. 904 (2002).)

[19] (Quoting *Nguyen*, 144 Wn.2d at 524 (quoting *Addington v. Texas*, 441 U.S. 418, 423, 99 S. Ct. 1804, 60 L. Ed. 2d 323 (1979)).)

[20] (Citing *Nguyen*, 144 Wn.2d at 524.)

[21] (Quoting *Nguyen*, 144 Wn.2d at 524.)

[22] PCC 6.07.015(A).

support an initial seizure or temporary detention; it is not an *evidentiary standard of proof* that justifies the permanent deprivation of property, which is one of the possible results of the DAD. *See Nationscapital Mortg. Corp. v. Dep't of Fin. Insts.*, 133 Wn. App. 723, 762, 137 P.3d 78 (2006) (determinations of probable cause to bring enforcement actions involve "different standards of proof" than determinations of whether violations actually occurred (citing *Withrow v. Larkin*, 421 U.S. 35, 95 S. Ct. 1456, 43 L. Ed. 2d 712 (1975))). Similarly, PCC 1.22.090(G) requires only that the hearing examiner evaluate the auditor's determination to determine if it was "clearly erroneous"; it does not state what standard of proof the auditor was required to apply.

¶32 Because we cannot discern any legally significant difference between requiring a pet owner to remove their otherwise properly licensed pet from the county or surrender the pet for disposal, as was the case in *Mansour*,[23] and imposing expensive and onerous conditions on pet owners who wish to continue to keep a licensed pet within the county, as is the case here,[24] we adopt *Mansour*'s holding that the proper standard of proof to uphold DADs is the preponderance of the evidence standard. Accordingly, we hold that summary judgment in favor of the County on this issue was inappropriate and that lack of an adequate evidentiary standard in PCC 6.07.015(A) violates due process.[25]

---

[23] *Mansour*, 131 Wn. App. at 266-67.

[24] *See* PCC 6.07.025 (requiring that the owner of a dangerous animal acquire a permit costing $500 per year and comply with a variety of additional restrictions (including obtaining $500,000 in liability insurance) and inspections—failure to obtain the permit or otherwise comply with this ordinance allows the County to seize the animal and hold it for no more than five days before destroying the animal).

[25] We do not remand this matter back for a rehearing because we hold in the unpublished portion of this opinion that the evidence was insufficient to support the DAD.

## D. Subpoena Powers

¶33 Downey also argues the auditor's lack of subpoena power violates due process. This assertion is speculative.

¶34 Although PCC 6.07.015(E)(3) does not expressly state that the auditor has subpoena power, Downey does not direct us to any rules, ordinances, or authority establishing exactly what powers the auditor has or whether the party challenging the DAD can resort to other judicial entities to obtain subpoenas if needed. Accordingly, Downey fails to overcome the presumption that the County's DAD ordinances are constitutional and her argument fails. The trial court properly dismissed this issue on summary judgment.[26] *See Shaw*, 161 Wn.2d at 458-59.

¶35 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

ARMSTRONG and VAN DEREN, JJ., concur.

Review denied at 174 Wn.2d 1016 (2012).

---

[26] Downey is correct that the *Mansour* court held that "[d]ue process requires that a pet owner contesting a removal order be able to subpoena witnesses and records." *Mansour*, 131 Wn. App. at 270. But in *Mansour*, the court was able to consider the board rules that applied to Mansour's hearing, and the board actually denied Mansour's discovery and subpoena requests. *Mansour*, 131 Wn. App. at 269. Here, in contrast, Downey has not provided any information about the rules that applied to the auditor's hearing, nor has she alleged or shown that the auditor would have denied any discovery or subpoena requests.